### 10830

SIMMONS v. STEVENS *ET AL.*

(110 S. E. 798)

HUSBAND AND WIFE—PARENT AND CHILD—INCOME DUE WIFE AND CHILDREN, COLLECTED AND USED BY HUSBAND FOR A LONG PERIOD, PRESUMED A GIFT.—Where husband conveyed his farm to wife for support of herself and children, and thereafter purchased other land, and caused conveyance to be made to wife, who conveyed land to son in trust for her support, and husband was thereafter permitted, without objection by wife or children, to remain in possession of the land, collect the rents, and treat the income as his own for a period of 35 years as to the first tract, and for 25 years as to the second tract, it will be presumed, on husband's death, that the husband received the income from the wife and the children by way of a gift.

Before MOORE, J., Spartanburg, September, 1920. Affirmed.

Action by Minnie C. Simmons in her own right and as Executrix of the Will of Samuel G. Cathcart, deceased, against Emma Stevens, Vernie F. Sumner, Joe Cathcart, Beulah Johnson and N. L. Bennett as Administrator of the Estate of Sabra Cathcart, deceased. From decree the defendants other than Beulah Johnson appeal.

The judgment of the Circuit Court, referred to in the opinion, follows:

This matter came on for a hearing before me upon exceptions by plaintiff and defendants to two reports of the master of this county. The chief question involved, though not all, is as to who is entitled to some $8,000 or $9,000, which was found in a bank to the credit of Samuel G. Cathcart, a few days after his death, which occurred in February, 1917, which the master found belonged to the plaintiff under the will of Samuel G. Cathcart.

As originally brought, this was an action for partition of certain real estate belonging to the following named children and grandchildren of Sam G. and Sabra Cathcart, his wife, viz.: Minnie C. Simmons, Emma Stevens, Vernie F. Sumner, Joe Cathcart, as children, and Beulah Johnson (grandchild), daughter of predeceased daughter. On motion of the children and grandchild, who are made party defendants, N. L. Bennett (the clerk of Court) was appointed administrator of the estate of Sabra Cathcart (who died June 9, 1914), and as such claimed the money above mentioned, and joined with the other defendants hereto in demanding that the estate of Sam G. Cathcart account to them for the rents and profits collected by him out of the land herein described.

The cause of action arose out of the following facts:

On the 11th day of July, 1879, Sam G. Cathcart, in consideration of love and affection conveyed unto his wife, Sabra Cathcart, the "Cooke place, containing 96 acres, more or less," and the "home place," containing 63 acres

more or less, her heirs and assigns, "upon trust, however, nevertheless, and to and for the uses, interests, and purposes hereinafter limited and described and declared; that is to say, upon trust to receive the issues, rents, and profits of the said premises and apply the same to the use of herself and my children now born, or that may hereafter be born, during the term of her natural life, and after the death of my said wife said premises to be equally divided among my children now born, or that may hereafter be born, share and share alike in fee."

On the 5th day of November, 1888, the purchase money being paid by Sam G. Cathcart, James Munro, as master, conveyed to Sabra Cathcart "163 acres, more or less," known as the "Forrest place," and thereafter on the 3d day of February, 1903, Sabra Cathcart conveyed the same to Joe A. Cathcart (her son) in trust as follows: Consideration $5 and love and affection, "unto the said Joe A. Cathcart, his heirs—in trust for the following uses and purpose; that is to say, to collect the rents and profits of the same during the term of my natural life and pay same over to me for a support, and at my death said trust to cease and said land to go and vest absolutely in my children, share and share alike, freed from all trust, the child or children of any predeceased child to take its parent's share."

There is in the record a written statement which Sabra Cathcart gave her son, Joe Cathcart, certifying that she collected all the rents and profits off of the tract last mentioned to 12th of October, 1906. It is abundantly proven that Sam G. Cathcart and his wife, Sabra, and their children, lived and worked on the lands above mentioned from the dates they were acquired until the children died or moved away (the only exception being Minnie C. Simmons, who continued to live with her parents), and until the death of Sabra Cathcart, which occurred in June, 1914,

and until the death of Sam G. Cathcart, which occurred in February, 1917.

It is not contradicted, but generally agreed, that during this entire time all of the land was, with the knowledge and acquiescence of Sabra Cathcart and their children, under the direction, supervision, and control of Sam G. Cathcart, who, with his wife and children, worked the land, or rented it out, collected the rents, and out of certain moneys in his hands paid the taxes, cleared the land, improved it, and supported his wife and children so long as they remained with him. The defendants claim that the money found in the bank to the credit of Sam G. Cathcart after his death was the excess of the rent which was collected, but not expended by S. G. Cathcart for the support of his wife and children, from date land was acquired up until the time of the death of Sabra Cathcart in June, 1914. So far as the rents and profits received by Sam G. Cathcart after the death of his wife, or those received by Minnie C. Simmons after the death of Sam G. Cathcart, the defendants do not, by their exceptions, put in issue the findings of fact by the master.

All the witnesses practically testify that Sam G. Cathcart controlled and used the place just as though it was his own; that he was hardworking, stingy, close, frugal, grasping (though honest), never bought anything that he could raise on the land, always had something to sell, took advantage of every opportunity to make money, and never spent anything unless he was obliged to. It was shown by several disinterested witnesses, though contradicted by several of the defendants, that Sam G. Cathcart put his money out on usurious rates, bought blackberries and made wine in large quantities in the late eighties or early nineties, and sold same at a dollar per gallon; that he was mixed up with a distillery and some intimation that he sold liquor as well, from which he derived what at that time was a

considerable sum; and plaintiff claims that the money in the bank was very largely, if not altogether, derived from this source and from additions thereto derived from excessive interest charged and collecting and trading.

The master, apparently, does not attach much importance to the testimony as to this last named method of acquiring such a large sum, and so finds; to which plaintiffs duly excepted in order to preserve their rights. The master takes the middle ground, and intimates the balance in the bank might have been derived from both sources, but under and by virtue of the holding of the Supreme Court in the case of *Thompson, Adm'r, v. Chapman, Adm'r,* 107 S. C., 464; 93 S. E., 142, no presumption could arise, from the facts in the case, that, because no one could account for where the money came from, therefore it must have been gotten and of necessity excess of rents over proper expenditures for maintenance and support of wife; that, if any presumption arose, it was that possession presumed ownership, and in so far as this particular fund was concerned that it was the property of the estate of Sam G. Cathcart.

The master grounded his report on the additional principle of law that, where the wife and children had acquiesced in the arrangement for a long period of time, from 1879 in connection with proceeds derived from two tracts, and from 1888 as to the other tract, by the terms of which arrangement the husband and father was allowed to collect all the income, treating and claiming it as his own, without objection from those who might have had the right, that from the long-continued acquiescence, and it was long in this instance, that the Court could infer their intent was to give it all to him, even if there was an excess, which has not been shown by the testimony up to this time, as no one has been able to show what the actual cost of supporting the family was, though it is a known

fact that few people have been able prior to 1914 to make more than a bare living from a farm.

On the hearing and arguing of exceptions before me, the Court requested the attorneys for both sides to furnish the Court with authorities on the last-named proposition. So far, the attorneys for the defendants have not furnished me with any decision that I deem applicable. The attorneys for the plaintiff rely on the case of *Charles v. Coker,* 2 S. C., 122, in which the Court says, on page 136, the following: "Even where the married woman is considered, in regard to her separate estate, as a femme sole, only to the extent of the power conferred by the instrument, if this does not restrict her disposition and alienation—if she permits the husband to receive the rents and profits of her etsate—the presumption is that it is with her assent and by way of gift [citing Hill on Trustees, 425, note 22]. In *Methodist Episcopal Church v. Jackues,* 3 Johns. Ch. 80, Chancellor Kent says in reference to this question: "That as between strangers a more severe and strict proof would be required, but the books teach us that the greatest liberality is shown, and the most favorable presumptions indulged, when the husband is permitted by the wife to be concerned in the management of the income of her separate estate, as it occasionally accrues."

In the case of *McLure v. Lancaster,* 24 S. C. 273, 58 Am. Rep. 259, the Court says as per syllabus (South Carolina reprint): "A gift from wife to husband may be inferred from circumstances, such as the use and appropriation by him for a series of years, the wife having knowledge and not objecting. The presumption in such case being stronger between husband and wife than between strangers. Thus, where a wife permitted her husband to manage her property, receive the profits and issues, and expend the surplus without question for ten years, the Judge properly left to the jury the question of gift of these [rents and]

profits and issues." And this was a case where the widow was suing the estate of her husband, and the jury found she had acquiesced, and the Supreme Court affirmed it, and the facts apparently were not as strong as they were in this case, for in this case we do not find the wife asking for anything, for in this case, according to the testimony of disinterested witnesses, she not only acquiesced, but agreed that Sam G. Cathcart should have the rent. The same principle was reaffirmed in *Martin v. Jennings,* 52 S. C., 382; 29 S. E., 807, and again in *Sanders v. Warehouse Co.,* 101 S. C., 386; 85 S. E., 900. I can see no reason why the same principle should not apply in the matter of acquiescence on the part of a child as applies in the case of a wife, *McDonald v. Crockett,* 2 McCord Eq. 130.

The conclusion from all the testimony is that, if Sabra Cathcart was living to-day, she would not bring this suit, and I cannot see that her executor, standing in her shoes, should be treated with more consideration that his deceased. She alone was entitled to the income from the "Forrest place," and if she did not feel she was entitled to anything from her husband from that tract of land during her life time, it is asking the Court of equity to go rather afield to allow her administrators to do so, particularly as the only one who could have perhaps answered all questions is now under the sod. And the same principle applies with equal propriety to his children. The inevitable conclusion to be drawn from the whole testimony is that the children at no time had the slightest or most remote intention of ever calling their father to account for any rents collected by him until after his voice was hushed in death, and it developed that a considerable sum of money was in the bank that passed under his will to the child who ministered to him in his old age and declining years.

The case of *Reeder v. Flinn,* 6 S. C. 216, is a parallel case in which the Court says, on page 242: "There is

another principal which materially affects the claim of the wife now interposed. It is her want of diligence in not resorting to the means of securing the income of the property for her sole use. 'Courts of equity administer their aid only in favor of those who are guilty of no improper acquiescence or delay. Hence, if there be a clear breach of trust by the trustee, yet if the *cestui que* trust or beneficiary has for a long time acquiesced in the misconduct of the trustee, with full knowledge of it, a Court of equity will not relieve him, but leave him to bear the fruits of his own negligence or infirmity of purpose' [citing 2 Story's Eq. § 1284]. The same reason exists for applying the principle to a husband permitted by the wife to use and control property secured to her separate use. If there has been a breach of duty on his part, her delay in freeing herself from the consequence and seeking reparation is another evidence of her assent and acquiescence."

The Courts have always looked with disfavor upon an "Indian gift," or an attempt on the part of near relatives to unscramble eggs by reconverting a gift in good faith and changing it back into a charge, and requiring the estate of the dead person to account to them for beneficences which were supposed to have been prompted by the natural instincts of an affectionate relative. Ex parte Aycock, 34 S. C., 256, 257; 13 S. E., 450; *Dash v. Inabinet*, 53 S. C., 385; 31 S. E., 297; *Gaston v. Gaston*, 80 S. C., 160; 61 S. E., 393; *Schnell v. Schroder*, Bailey's Eq., 334; *Sullivan v. Latimer*, 38 S. C., 167; 17 S. E., 701. And the same rule applies where they do not live together. *Wessinger v. Roberts*, 67 S. C., 240; 45 S. E., 169. And the Courts look with particular disfavor upon an action brought after the party who could have spoken is dead. *Callum v. Rice*, 35 S. C., 554; 15 S. E., 268.

It follows, therefore, that in so far as the liability of the plaintiff, either individually or as executrix of Sam G.

Cathcart, being required to account to the defendants, that she is due the defendants to this action nothing, and the report of the master to that extent is affirmed and made the judgment of this Court. Upon full consideration of the reports made by the master herein, and of the exceptions thereto by the plaintiffs and by the defendants herein, it is considered that the exceptions must be overruled, and the findings and conclusions of the master must be affirmed, for the reasons stated in his reports.

It is further ordered that any party have leave to apply at the foot of this decree for any order necessary to carry same into effect.

*Messrs. John Gary Evans* and *J. A. Sawyer,* for appellants, cite: *No presumption of a gift*: 107 S. C., 464; 52 S. C., 373; 24 S. C., 273; 101 S. C., 382; 6 S. C., 216; 106 S. C., 478; 21 Cyc., 1299, 1300, 1392-2; 5 S. C. Eq., 250; 34 S. C., 401; 56 S. C., 170. *Purchaser of trust estate with knowledge takes it subject to trust*: 100 S. C., 220. *Trustee must account*: 100 S. C., 52. *And trust fund may be claimed where traced*: Rich. Eq. Cas. 175; 26 S. C., 386; 2 Pom. Ewp. Jur., Par. 1076; 13 Ch. Div., 696; 104 U. S. 54. *Burden of proof is on trustee*: 39 Cyc. 532, 536; 55 S. C., 456. *Husband was agent for wife*: 17 S. C., 329; 31 S. C., 436; 35 S. C., 42; 101 S. C., 381.

*Messrs. Nicholls & Nicholls* and *I. A. Phifer,* for respondent, cite: *Presumption of ownership from possession*: 107 S. C., 464. *Presumption that husband received rents by consent of wife*: 2 S. C., 122. *Relation of child and father as close as that of man and wife*: 2 McC. Eq. 430. *Claim is stale*: 35 S. C., 554. *Family arrangements will not be disturbed by Courts*: 32 S. C., 263.

February 27, 1922.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

For the reasons therein assigned, the judgment of the Circuit Court is affirmed.